**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CONSTRUCTION ENTERPRISES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GEMINI INSURANCE COMPANY,** | ) | **CASE NO.** |
| **ALLIED WORLD NATIONAL** | ) | |
| **ASSURANCE COMPANY, EVANSTON** | ) | **JURY DEMANDED** |
| **INSURANCE COMPANY, OHIO** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| **and COLONY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Construction Enterprises, Inc. ("CEI"), brings this Complaint for Declaratory Judgment as to Defendants Gemini Insurance Company ("Gemini"), Allied World National Assurance Company ("Allied World"), Evanston Insurance Company ("Evanston"), Ohio Casualty Insurance Company ("Ohio Casualty"), and Colony Insurance Company ("Colony"), for common law breach of the duty to negotiate settlement in good faith as to Allied World, and for statutory bad faith as to Allied World and states:

## NATURE OF THE ACTION

1.     This is an action for damages and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, for declaratory judgment holding that damage to exterior panels installed by CEI's subcontractors and water infiltration associated with those panels, as alleged in litigation and arbitration brought against CEI, constitutes "'property damage' caused by an occurrence" under the terms of general liability insurance policies CEI purchased from Gemini and Allied World (collectively, the "Primary Insurers") and excess liability policies issued by Allied World,

Evanston Insurance, Ohio Casualty, and Colony (collectively, the "Excess Insurers"), triggering duties to defend and settle those claims.

2.     CEI further seeks relief under Tennessee common law for bad faith failure to negotiate settlement of the claims against CEI related to property damage in Colorado.

3.     CEI further seeks relief under Colorado statutes that govern the conduct of insurers doing business in Colorado.

## PARTIES

4.     CEI is a Tennessee corporation headquartered in Franklin, Tennessee.

5.     Allied World is a Delaware corporation headquartered in New York, New York.

6.     Allied World issued primary general liability insurance policies to CEI with limits of $2,000,000.00 per occurrence and $4,000,000.00 in the aggregate covering CEI's insurable risks for the periods from February 16, 2013 through February 16, 2014, February 16, 2014 through February 16, 2015, and February 16, 2015 through February 16, 2016.

7.     Allied World issued excess liability insurance policies to CEI, including a policy with an additional $10,000,000.00 per occurrence limit covering CEI's insurable risks for the period from February 16, 2013 through February 16, 2014, and policies each with additional $20,000,000.00 per occurrence limits covering CEI's insurable risks for the periods from February 16, 2014 through February 16, 2015 and February 16, 2015 through February 16, 2016.

8.     Gemini is a Delaware corporation headquartered in Greenwich, Connecticut.

9.     Gemini sold primary general liability insurance policies to CEI with limits of $2,000,000.00 per occurrence and $4,000,000.00 in the aggregate covering CEI's insurable risks for the periods from February 16, 2016 through February 16, 2017, February 16, 2017 through

- 2 -

February 16, 2018, February 16, 2018 through February 16, 2019, and February 16, 2019 through August 1, 2020.

10.     Evanston Insurance is an Illinois corporation headquartered in North Deerfield, Illinois.

11.     Evanston Insurance sold excess liability policies to CEI, excess of the Gemini Primary Policies, including policies with a $10,000,000.00 per occurrence limit covering CEI's insurable risks for the periods from February 16, 2016 through February 16, 2017, February 16, 2017 through February 16, 2018, February 16, 2018 through February 16, 2019, and February 16, 2019 through August 1, 2020.

12.     Ohio Casualty is a New Hampshire corporation headquartered in Boston, Massachusetts.

13.     Ohio Casualty sold excess liability policies to CEI, excess of the Gemini Primary Policies and the Evanston Excess policies, including a policy with an $10,000,000.00 per occurrence limit covering CEI's insurable risks for the periods from February 16, 2016 through July 21, 2016, and $15,000,000.00 per occurrence limit for July 21, 2016 through February 16, 2017, February 16, 2017 through February 16, 2018, February 16, 2018 through February 16, 2019, and February 16, 2019 through August 1, 2020.

14.     Colony is a Virginia corporation headquartered in Richmond, Virginia.

15.     Colony sold excess liability policies to CEI, excess of the Gemini Primary Policies, the Evanston Excess Policies, and the Ohio Casualty Excess Policies, including a policy with an $25,000,000.00 per occurrence limit covering CEI's insurable risks for the periods from February 16, 2016 through February 16, 2017 and February 16, 2017 through February 16, 2018.

- 3 -

## JURISDICTION & VENUE

16.    Each Primary Insurer and Each Excess Insurer is subject to personal jurisdiction in the State of Tennessee because they sold the policies at issue to CEI in the State of Tennessee.

17.    Allied World is further subject to personal jurisdiction in the State of Tennessee because it breached its duty to negotiate settlement in good faith claims against Tennessee-resident CEI.

18.    The value of the disputed coverage exceeds $75,000, and there is complete diversity between Tennessee-citizen CEI and defendants (none of whom are Tennessee citizens), so the federal courts have subject matter jurisdiction over this dispute under 28 U.S.C. § 1332.

19.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in the Middle District of Tennessee and any or all defendants are subject to the Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

*CEI paid several million dollars to insure against liability*
*for damages caused by its subcontractors' work.*

20.    CEI is a general contracting firm established in 1977 that specializes in the multi-family market, including mid-rise student housing.

21.    CEI provides some materials but not labor for the projects in which it serves as general contractor.   Instead, CEI assists property owners and developers in securing and coordinating the work of subcontractors who perform the work needed to complete the construction process.

22.    CEI paid nearly $2,900,000.00 in premium for primary commercial general liability coverage from February 2013 through February 2020:

- 4 -

a.      CEI paid Allied World $266,290.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2013 through February 16, 2014 (Policy #0308-1494, the "2013 Allied World Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit A**.

b.      CEI paid Allied World $382,130.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2014 through February 16, 2015 (Policy #0308-1494, the "2014 Allied World Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit B**.

c.      CEI paid Allied World $378,312.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2015 through February 16, 2016 (Policy #0308-1494, the "2015 Allied World Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit C**.

d.      CEI paid Gemini $425,040.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2016 through February 16, 2017 (Policy #VGGP001915, the "2016 Gemini Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit D**.

e.      CEI paid Gemini $446,292.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2017 through February 16,

2018 (Policy #VGGP002531, the "2017 Gemini Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit E**.

       f.      CEI paid Gemini $440,239.00 for a primary commercial general liability policy with a $2,000,000.00 limit per occurrence and $4,000,000.00 in the aggregate covering the period from February 16, 2018 through February 16, 2019 (Policy #VGGP003109, the "2018 Gemini Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit F**.

       g.      CEI paid Gemini $381,669.00 for a primary commercial general liability policy with a $2 million per-occurrence limit covering the period from February 16, 2019 through February 1, 2020 (Policy #VGGP003886, the "2019 Gemini Primary Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit G**.

       h.      CEI paid Gemini $173,659.00 to extend the 2019 Gemini Primary Policy from February 16, 2020 to August 1, 2020.

23.     The primary commercial general policies listed in the immediately preceding paragraph (including its subparagraphs) are hereinafter referred to collectively as the "Primary Policies" and individually as a "Primary Policy."

24.     Every Primary Policy obligates the issuing insurer to pay all sums that CEI becomes legally obligated to pay as damages because of property damage caused by an occurrence that occurs during the policy period in the coverage area.

25.     CEI paid more than $1,700,000.00 in additional premium for excess insurance coverage over and above each of the underlying Primary Policies:

- 6 -

a.    CEI paid at least $95,000.00 for $10,000,000.00 in excess coverage from Allied World covering the period from February 16, 2013 through February 16, 2014 (Policy # 0308-1497, the "2013 Allied World Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit H**.

b.    CEI paid at least $191,000.00 for $20,000,000.00 in excess coverage from Allied World covering the period from February 16, 2014 through February 16, 2015 (Policy # 0308-1497, the "2014 Allied World Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit I**.

c.    CEI paid at least $185,375.00 for $20,000,000.00 in excess coverage from Allied World covering the period from February 16, 2015 through February 16, 2016 (Policy # 0308-1497, the "2015 Allied World Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit J**.

d.    CEI paid at least $251,000.00 for $10,000,000.00 in excess coverage from Evanston Insurance covering the period from February 16, 2016 through February 16, 2017 (Policy # MKLV20LE106394, the "2016 Evanston Insurance Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit K**.

e.    CEI paid at least $260,000.00 for $10,000,000.00 in excess coverage from Evanston Insurance covering the period from February 16, 2017 through February 16, 2018 (Policy # MKLV2EUL10156, the "2017 Evanston Insurance Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit L**.

f.      CEI paid at least $260,000.00 for $10,000,000.00 in excess coverage from Evanston Insurance covering the period from February 16, 2018 through February 16, 2019 (Policy # MKLV2EUL102273, the "2018 Evanston Insurance Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit M**.

g.      CEI paid at least $55,575.00 for $10,000,000.00 in second layer excess coverage from Ohio Casualty covering the period from February 16, 2016 through February 16, 2017 (Policy # ECO(17)57154800, the "2016 Ohio Casualty Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit N**.

h.      CEI paid $12,278.00 to purchase an additional $5,000,000.00 in second layer excess coverage (for a total of $15,000,000.00) from Ohio Casualty covering the period from July 21, 2016 through February 16, 2017 (the "July 2016 Ohio Casualty Endorsement"). A true and accurate copy of that policy is attached hereto as **Exhibit O**.

i.      CEI paid $78,885.00 for $15,000,000.00 in second layer excess coverage from Ohio Casualty covering the period from February 16, 2017 through February 16, 2018 (Policy # ECO(18)57154800, the "2017 Ohio Casualty Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit P**.

j.      CEI paid $78,885.00 for $15,000,000.00 in second layer excess coverage from Ohio Casualty covering the period from February 16, 2018 through February 16, 2019 (Policy # ECO(19)57154800, the "2018 Ohio Casualty Excess Policy"). A true and accurate copy of that policy is attached hereto as **Exhibit Q**.

- 8 -

k.     CEI paid $67,009.00 for $15,000,000.00 in second layer excess coverage from Ohio Casualty covering the period from February 16, 2019 through February 1, 2020 (Policy # ECO(20)57154800, the "2019 Ohio Casualty Excess Policy"), which was extended through August 1, 2020 by an endorsement for which CEI paid $33,411.00.  A true and accurate copy of that policy is attached hereto as **Exhibit R**.

l.     CEI paid $50,000.00 for $25,000,000.00 in third layer excess coverage from Colony covering the period from August 2, 2016 through February 16, 2017 (Policy # AR4460544, the "2016 Colony Excess Policy").  A true and accurate copy of that policy is attached hereto as **Exhibit S**.

m.     CEI paid $92,250.00 for $25,000,000.00 in third layer excess coverage from Evanston Insurance covering the period from February 16, 2017 through February 16, 2018 (Policy # AR4460544, the "2017 Colony Excess Policy").  A true and accurate copy of that policy is attached hereto as **Exhibit T**.

26.     The excess liability policies listed in the immediately preceding paragraph (including its subparagraphs) are hereinafter referred to collectively as the "Excess Policies" and individually as an "Excess Policy."

27.     The Excess Policies follow the form of their underlying Primary Policies.

28.     Including the Primary Policies and Excess Policies listed above, CEI purchased $236,000,000.00 in general liability coverage for damages caused by property damage during the relevant periods.

*CEI served as the general contractor for three projects.*

- 9 -

29.     CEI served as the general contractor on the construction of a student housing complex in Fort Collins, Colorado (the "Colorado Project").

30.     Construction on the Colorado Project began in 2013.

31.     The Colorado Project included the use of 4 foot by 8 foot fiber cement panels (the "Panels") on the exterior walls.

32.     CEI purchased the Panels, which were then installed exclusively by subcontractors, not by CEI.

33.     The certificate of occupancy for the Colorado Project was issued on August 14, 2014.

34.     CEI also served as the general contractor on the construction of two other projects in Alabama and Oregon using similar Panels (respectively, the "Alabama Project" and the "Oregon Project").

35.     Construction on the Alabama Project began in 2012, and certificates of occupancy were issued in August 2013 and December 2014.

36.     The Alabama Project also included the use of Panels on the exterior walls.

37.     CEI purchased the Panels, which were then installed exclusively by subcontractors, not by CEI.

38.     Construction on the Oregon Project began in 2013, and the certificate of occupancy was issued in December 2014.

39.     The Oregon Project also included the use of Panels on the exterior walls.

40.     CEI purchased the Panels, which were then installed exclusively by subcontractors, not by CEI.

*Dispute over the Projects triggers CEI's insurance policies.*

- 10 -

41.     In 2016, The Colorado Project was purchased by Fort Collins Properties I, LLC, a Delaware limited liability company with its principal address of 5 Bryant Park, 1065 6th Avenue, 28th Floor, New York, New York 10018.

42.     On January 6, 2021, Fort Collins Properties I, LLC sued CEI in a Colorado state court (the "Colorado Dispute").

43.     The Colorado Dispute proceeded from Colorado state court to arbitration.  A true and correct copy of the operative pleading in Colorado Dispute is attached as **Exhibit U**.

44.     The primary issue raised in the Colorado Dispute involves the installation of the Panels by CEI's subcontractors.  The allegations include, but are not limited to, loose fasteners protruding from panels, overdriven fasteners, cracked panels, missing portions of panels that broke off along cracks, and fasteners that are not secured to stud framing.  Fort Collins Properties I, LLC alleges that overdriven nails and cracks in the Panels allow moisture into and behind the panels, leading to deterioration of the Panels and to water damage to other construction elements.

45.     Fort Collins Properties I, LLC maintains that destructive testing demonstrates, among other things, moisture damage to the Panels and water intrusion behind the Panels, which has damaged other building components.

46.     Fort Collins Properties I, LLC's expert recommends removing all of the Panels, inspecting the substrate behind the panels for damage and deterioration, replacing any damaged substrate materials, installing new weather resistive barrier, and installing new Panels.

47.     The same ownership group that initiated the Colorado Dispute (the "Building Owners") purchased both the Alabama Project and the Oregon Project through Jefferson Loft, LLC, a Delaware limited liability company with a principal address of 5 Bryant Park, 28th Floor, New York, New York 10018.

- 11 -

48.     On information and belief, Jefferson Loft, LLC and Fort Collins Properties I, LLC share members.

49.     Jefferson Loft, LLC sued CEI over the Alabama Project alleging theories of damage related to subcontractor installation of the Panels similar to those alleged in the Colorado Dispute (the "Alabama Dispute").  A true and accurate copy of the operative complaint in the Alabama Dispute is attached hereto as **Exhibit V**.

50.     The primary issue raised in the Alabama Dispute involves the installation of the Panels by CEI's subcontractors.  The allegations include, but are not limited to, loose fasteners protruding from panels, overdriven fasteners, cracked panels, missing portions of panels that broke off along cracks, and fasteners that are not secured to stud framing.  Jefferson Loft, LLC alleges that overdriven nails and cracks in the Panels allow moisture into and behind the panels, leading to deterioration of the Panels and to water damage to other construction elements.

51.     Jefferson Loft, LLC maintains that destructive testing demonstrates, among other things, moisture damage to the Panels and water intrusion behind the Panels, which has damaged other building components at the Alabama Project.

52.     Jefferson Loft, LLC's expert recommends removing all of the Panels, inspecting the substrate behind the panels for damage and deterioration, replacing any damaged substrate materials, installing new weather resistive barrier, and installing new Panels.

53.     Jefferson Loft, LLC also sued CEI over the Oregon Project alleging theories of damage related to subcontractor installation of the Panels similar to those alleged in the Colorado Dispute and the Alabama Dispute (the "Oregon Dispute") (collectively, the Colorado Dispute, the Alabama Dispute, and the Oregon Dispute are the "Panel Dispute Matters").  A true and accurate copy of the operative complaint in the Oregon Dispute is attached hereto as **Exhibit W**.

- 12 -

54.     The primary issue raised in the Oregon Dispute involves the installation of the Panels by CEI's subcontractors.  The allegations include, but are not limited to, loose fasteners protruding from panels, overdriven fasteners, cracked panels missing portions of panels that broke off along cracks, and fasteners that are not secured to stud framing.  Jefferson Loft, LLC alleges that overdriven nails and cracks in the Panels allow moisture into and behind the panels, leading to deterioration of the Panels and to water damage to other construction elements.

55.     Jefferson Loft, LLC maintains that destructive testing demonstrates, among other things, moisture damage to the Panels and water intrusion behind the Panels, which has damaged other building components at the Oregon Project.

56.     Jefferson Loft, LLC's expert recommends removing all of the Panels, inspecting the substrate behind the panels for damage and deterioration, replacing any damaged substrate materials, installing new weather resistive barrier, and installing new Panels.

57.     The damages alleged in the complaints in each of the Panel Dispute Matters triggered the insurers' duty to defend under the Primary Policies, which Allied World and Gemini have acknowledged.

*Failed Mediations of the Colorado Dispute*

58.     CEI appeared with its Primary Insurers for a mediation of the Colorado Dispute with the Building Owners on November 1, 2022 (the "November 2022 Mediation").

59.     Ahead of the November 2022 Mediation, defense counsel retained by the Primary Insurers submitted reports to CEI and to CEI's insurers assessing CEI's potential liability and making recommendations as to settlement value.

60.     CEI attended the November 2022 Mediation expecting an attempt to settle the Colorado Dispute within the scope of the recommendation provided to CEI and the Primary Insurers by insurer retained defense counsel.

- 13 -

61.     At the November 2022 Mediation, Allied World did not negotiate settlement in good faith.

62.     Allied World did not have an adjuster attend the November 2022 Mediation. Instead, Allied World attended only through its outside coverage counsel, who was retained solely to represent Allied World's interest in the Primary and Excess Policies.

63.     Following the failed November 2022 Mediation, CEI retained insurance coverage counsel.

64.     With the Colorado Dispute set for a two week arbitration to begin on April 4, 2023, CEI and its insurers participated in an insurance coverage mediation on February 21, 2023 (the "February 2023 Mediation") and a second mediation with the Building Owners on March 6, 2023 (the "March 2023 Mediation").

65.     As with the November 2022 Mediation, the only Allied World representative to attend the February 2023 Mediation was outside coverage counsel retained by Allied World solely to represent Allied World's interests.

66.     An Allied World adjuster attended the March 2023 Mediation with Allied World's outside coverage counsel, but Allied World was not prepared to participate meaningfully in settlement negotiations.

67.     The Colorado Dispute was not resolved at any of the three mediations.

68.     The week before the arbitration hearing in the Colorado Dispute was set to proceed, the hearing was continued due to the production of recently identified documents that had not previously been disclosed by the claimant. The arbitration of the Colorado Dispute is set for hearing in March 2024.

- 14 -

69.     The Alabama Dispute is set for mediation on May 5, 2023 and May 22, 2023, with trial to follow in October 2023 if the matter is not resolved at mediation.

70.     The Oregon Dispute is set for mediation on May 11, 2023 and May 12, 2023, with trial to follow in June 2023 if the matter is not resolved at mediation.

<u>**FIRST CAUSE OF ACTION:**</u>
<u>**Declaratory Relief**</u>

71.     CEI incorporates and realleges each and every allegation as if set forth in the preceding paragraphs.

72.     The Primary Insurers and Excess Insurers constitute interested parties under the Declaratory Judgment Act, 28, U.S.C. § 2201 *et seq.*, whose rights and responsibilities are affected by the Primary Policies and Excess Policies.

73.     An actual controversy exists as to the rights, status, and legal relations of CEI and the Primary Insurers and the Excess Insurers under the Primary Policies and the Excess Policies.

74.     CEI is entitled to a declaration of the rights, status, and legal relation of CEI and the Primary Insurers and Excess Insurers under the Primary Policies and Excess Policies with respect to the damages alleged and potentially supported by evidence in the Colorado Dispute, the Alabama Dispute, and the Oregon Dispute.

75.     A declaration of the rights, status, and legal relation of CEI and the Primary Insurers and Excess Insurers under the Primary Policies and Excess Policies with respect to the damages alleged and potentially supported by evidence in the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute would resolve the controversy between CEI and the Primary and Excess Insurers and facilitate the resolution of the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute.

- 15 -

76.     Therefore, CEI respectfully requests that the Court make the following declarations:

        a.     Negligent installation of the Panels by CEI's subcontractors (as alleged and to the extent it may be proved in the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute) constitutes an occurrence under the Primary Policies and Excess Policies;

        b.     Damage to the Panels (as alleged and to the extent it may be proved in the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute) constitutes property damage under the Primary Policies and Excess Policies;

        c.     The damages alleged and at issue in the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute are not solely for replacement of a defective component or correction of faulty installation that constitutes CEI's work;

        d.     Water damage to construction components other than the Panels (as alleged and to the extent it may be proven in the Colorado Dispute, the Oregon Dispute, and the Alabama Dispute) constitutes property damage under the Primary Policies and Excess Policies; and

        e.     The cost of removing and replacing the Panels is covered by the Primary Policies and Excess Policies.

        f.     The Continuous and Progressive Exclusion in the Gemini Primary Policies is void and unenforceable pursuant to Colorado Revised Statute § 10-4-110.4

77.     CEI is entitled to the foregoing declarations.

- 16 -

## SECOND CAUSE OF ACTION:
### Common Law Breach of the Duty to Negotiate Settlement in Good Faith against Allied World

78.     CEI incorporates and realleges each and every allegation as if set forth in the preceding paragraphs.

79.     Allied World has provided a defense for CEI in the Panel Dispute Matters.

80.     By providing a defense, Allied World has a duty to negotiate settlement in good faith as an integral part of that defense.

81.     Furthermore, Allied World and Gemini's failure to negotiate settlement of the Colorado Dispute in good faith and their other communications with CEI reflect a preemptive repudiation of their obligations and duties under the Primary Policies, including, but not limited to their obligation to negotiate settlement of both the Oregon Dispute and the Alabama Dispute in good faith.

82.     Allied World has breached the duty to negotiate settlement in good faith by one or more of the following unreasonable acts:

    a.     Failing to provide a representative at the November 2022 Mediation with settlement authority to act on behalf of the insured; Allied World attended only through its outside coverage counsel, who was retained solely to represent Allied World's interest in the Primary and Excess Policies;

    b.     Failing to provide any response to one or more reasonable settlement demands to resolve the claims against CEI within the Primary Policy limits of liability;

    c.     Failing to provide a representative at the February 2023 coverage mediation with settlement authority on behalf of the insured; Allied World

- 17 -

attended only through its outside coverage counsel, who was retained solely to represent Allied World's interest in the Primary and Excess Policies;

d.      Ignoring the recommendations of insurer retained defense counsel that the Panel Dispute Matters be settled;

e.      Failing to investigate the claims in the Panel Dispute Matters with ordinary care and diligence;

f.      Disregarding the risk of substantial judgments against CEI, which could imperil CEI's existence as a going concern;

g.      Completely disregarding the financial interest of the Insured;

h.      Placing the interest of the insurer above the interest of the insured;

i.      Failing to acknowledge and respond to communications from CEI;

j.      Requiring CEI to retain insurance coverage counsel to recover amounts due under its insurance policies;

k.      Requiring CEI to resort to litigation to recover amounts due under its insurance policies;

l.      Failing to communicate coverage positions to the Insured;

m.      Failing to communicate reservations of rights to the Insured in a timely manner;

n.      Repeatedly requesting information that had already been provided multiple times and falsely claiming that such information had not been provided; and

o.      Other conduct to be revealed in discovery.

83.      As a direct and proximate cause of Allied World's bad faith breach of its Primary Policy and potentially Excess Policy, CEI has suffered damages in an amount to be proven at trial.

- 18 -

84.     CEI reserves the right to amend this Cause of Action to the extent additional information is identified in discovery.

### THIRD CAUSE OF ACTION:
### Statutory Bad Faith: Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116
### (as to Allied World)

85.     CEI realleges each and every allegation as if set forth in the preceding paragraphs.

86.     Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 are applicable to Allied World's refusal to make full and adequate payment of insurance benefits to CEI in connection with the Colorado Dispute.

87.     Allied World has unreasonably delayed or denied insurance policy benefits issued by insurers doing business in Colorado as referenced in Colorado Revised Statutes § 10-3-1116 to policies.

88.     Pursuant to Colorado Revised Statutes § 10-3-1116, CEI is entitled to bring an action to recover reasonable attorney's fees and court costs and two times the amount of the recovered benefits that were unreasonably delayed or denied by Allied World's conduct.

89.     Allied World has delayed or denied payment of benefits without a reasonable basis so as to entitle CEI to the full extent of penalties in the form of attorney's fees, court costs and two times the covered benefits.

90.     CEI reserves the right to amend this Cause of Action to the extent additional information is identified in discovery.

### PRAYER FOR RELIEF

**WHEREFORE**, Construction Enterprises, Inc. respectfully requests:

a.     A declaration that negligent installation of the Panels by CEI's subcontractors constitutes an occurrence under the Primary Policies and Excess Policies;

- 19 -

b.     A declaration that negligent installation of the Panels by CEI's subcontractors (as alleged and to the extent it may be proven in the Panel Dispute Matters) caused physical damage to the Panels;

c.     A declaration that damage to the Panels (as alleged and to the extent it may be proven in the Panel Dispute Matters) constitutes property damage under the Primary Policies and Excess Policies;

d.     A declaration that the damages alleged and that may be proven in the Panel Dispute Matters are not solely for replacement of a defective component or the correction of faulty installation;

e.     A declaration that water damage to construction components other than the Panels (as alleged and to the extent it may be proven in the Panel Dispute Matters) constitutes property damage under the Primary Policies and Excess Policies;

f.     A declaration that the cost of removing and replacing the Panels (as alleged and to the extent it may be proven in the Panel Dispute Matters) is covered by the Primary Policies and Excess Policies;

g.     A declaration that the Continuous and Progressive Exclusion in the Gemini Primary Policies is void and unenforceable pursuant to Colorado Revised Statute § 10-4-110.4;

h.     An order awarding Construction Enterprises, Inc. its costs, expenses, and reasonable attorneys' fees;

i.     Punitive damages from Allied World in an amount authorized by law or as the jury may find appropriate;

j.     Pre-and post-judgment interest;

- 20 -

k.      A jury trial on all issues so triable; and

l.      Such other further relief to which Construction Enterprises, Inc. may be entitled as a matter of law or equity, or which the Court deems to be just and proper.

Respectfully submitted,

*sHeather Howell Wright*
Heather Howell Wright (TN BPR #30649)
Jeffrey W. Sheehan (TN BPR #33534)
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: 615-252-2342
Facsimile: 615-252-6342
hwright@bradley.com
jsheehan@bradley.com

*Counsel for Plaintiff*

- 21 -